J-A29014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON PAUL STASKO | : | |
| | : | |
| Appellant | : | No. 228 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 3, 2020
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0002853-2018

BEFORE: BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED: February 9, 2024**

Jason Paul Stasko appeals the judgment of sentence of nine to eighteen years of imprisonment following his convictions for drug delivery resulting in death ("DDRD") and related offenses. We affirm.

We glean the following background from the certified record. The victim in this matter was Carrie Mingrino ("Victim"). On November 14, 2018, Victim spent the night with her best friend, Lauren Greenlee, at a residence Ms. Greenlee shared with her mother and then-boyfriend, Travis Porterfield. Ms. Greenlee testified that she invited Victim to stay overnight because she knew Victim was recovering from a heroin addiction and was afraid Victim would relapse. Ms. Greenlee drank beers with Victim and stayed up with her until approximately 3:15 a.m. on November 15, 2018. She did not observe Victim using drugs at any point, nor did she believe that Victim possessed any controlled substances. Mr. Porterfield also stayed up with Victim until

approximately 3:30 a.m. and similarly denied observing her with any illegal substances. At the time Mr. Porterfield went to bed, Victim was on the telephone, asking someone "Are you coming?" several times.

At approximately 4:45 or 5:00 a.m. the same morning, Ms. Greenlee was awoken by her mother, who indicated that she could not find Victim and that a man she did not know, later identified as Appellant, was asleep on the couch in the living room. Victim was found in the kitchen, not breathing and unresponsive. Ms. Greenlee began administering CPR while her mother called 911.

Corporal Andrew Hominsky and Patrolman Jacob Cavanaugh of the Connellsville Police Department were the first to respond to the residence, shortly after 6:00 a.m. Corporal Hominsky testified that when he arrived Appellant was sleeping on the couch with a blanket partially covering his head, despite the fact that Ms. Greenlee and her mother were crying hysterically. The corporal roused Appellant awake, but Appellant fell back asleep. He then instructed Ms. Greenlee to wait outside for ambulances to arrive and directed Patrolman Cavanaugh to continue administering CPR. At some point while Ms. Greenlee was waiting on the sidewalk for the paramedics, Appellant woke up and left the residence, telling Ms. Greenlee, "I can't be here. I've got warrants." N.T. Trial, 7/20-22/20, at 107.

Victim was subsequently pronounced dead at the scene. Medical personnel found a hypodermic needle, still partially filled with fluid, under her body. The police recovered Appellant's cell phone, which was left on the

- 2 -

couch. Victim's cell phone was also located and secured. At the time it was collected, Victim's phone was displaying an active call with Appellant's phone number and had been going for about two hours and forty-five minutes. Appellant's number was saved in Victim's phone as "Jason."

Victim's blood tested positive for both ethanol and fentanyl. The forensic pathologist introduced by the Commonwealth at trial opined that the level of fentanyl constituted a lethal dose, and that based on the fast metabolization of fentanyl, Victim would have died almost immediately after the drug was administered. It was determined that the manner of death was an accident and that the cause was combined drug toxicity as a result of fentanyl and added ethanol.

During their investigation, police analyzed the cellular phones of Appellant and Victim. Appellant's text message history showed extensive contact with numerous individuals the day before Victim's death, asking for "breezy" and "tickets," both of which are slang terms for heroin. Additionally, there were numerous telephone calls and text messages between Appellant and Victim made the day prior to, and the morning of, her death. Notably, at 11:15 p.m. on November 14, Appellant texted Victim that "I just found the stuff you wanted." Victim thereafter called Appellant thirty-two times without success. Eventually, Appellant and Victim had a four-minute call at 3:07 a.m. on November 15, and then a final call that began at 3:15 a.m. and lasted until Victim's cell phone was located by police after her death.

The Commonwealth ultimately charged Appellant with DDRD, delivery of a controlled substance, and related drug offenses. Following trial, a jury convicted Appellant of all charges. He was sentenced as indicated hereinabove. This timely appeal followed, and Appellant complied with the trial court's order to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b).

Appellant advances a single issue for our consideration: "Whether the Commonwealth presented insufficient evidence to sustain the guilty verdicts as it failed to present sufficient evidence that [Appellant] delivered any controlled substances to the victim?" Appellant's brief at 5 (unnecessary capitalization omitted).

We consider Appellant's claim mindful of the following well-settled standard of review:

> When reviewing a [sufficiency] claim, we face a question of law. Accordingly, our standard of review is *de novo*. We view the evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth proved all of the elements of the crime at issue beyond a reasonable doubt.
>
> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, we may not weigh the evidence and substitute our judgment for the factfinder. Any doubts regarding a defendant's guilt may be resolved by the factfinder, unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Roberts***, 293 A.3d 1221, 1223 (Pa.Super. 2023) (cleaned up).

Appellant challenges his convictions for both DDRD and delivery of a controlled substance. Concerning DDRD,

> A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of [§] 13(a)(14) or (30) of the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S. § 2506(a). Delivery of a controlled substance is defined as "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance."[1] 35 P.S. § 780-113(a)(30).

On appeal, Appellant argues that the Commonwealth "did not present any evidence that he delivered, intentional[ly] or otherwise, any controlled substance to [Victim]" on the date of her death. Appellant's brief at 11. Similarly, he notes that there was no testimony that connected Appellant to the syringe found under Victim or that he had any drugs on his person when he came to the residence. ***Id***. at 11-12. Appellant highlights that there were

_____

[1] Appellant does not contest that fentanyl is a controlled substance pursuant to The Controlled Substance, Drug, Device and Cosmetic Act.

other individuals present in the home at the time of Victim's death, and none of the text communications introduced by the Commonwealth conclusively showed that Appellant secured fentanyl. *Id*. at 12. He likewise asserts that there was a lack of evidence demonstrating any relationship between Victim and Appellant at all. *Id*. at 13. Appellant concludes that overall, the circumstantial evidence supplied by the Commonwealth was not adequate to prove the delivery element of his convictions. *Id*. at 14-15.

In rejecting this claim, the trial court determined that the Commonwealth provided sufficient circumstantial evidence to show that Appellant delivered the fentanyl that killed Victim. It noted as follows:

> The call and text message logs reveal significant history in the day before her death from [Victim] to [Appellant] with [Appellant] responding that he 'found the stuff' that [she] wanted. The telephone data is replete the entire day before [Victim]'s death with [Appellant] attempting to locate controlled substances from others. The last activity on [Victim]'s cell phone was a telephone call with [Appellant] that ran continuously from 3:15 a.m. on November 15, 2018, for two hours and forty-five minutes lasting until after her death.

Trial Court Opinion, 5/2/23, at 14. The court concluded that the Commonwealth established that "[Appellant] was the only person present at the time of [Victim]'s death, that he was the last person to text message and call her, that one text message stated he found 'the stuff,' and that he fled the scene." *Id*.

Upon review, we agree with the trial court that the Commonwealth provided sufficient testimony to support Appellant's convictions for DDRD and

delivery of a controlled substance. In considering the circumstantial evidence and all reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner, we conclude that the Commonwealth proved beyond a reasonable doubt that Appellant delivered the fentanyl that resulted in Victim's death. No witnesses observed Victim in possession of or using any controlled substance as late as approximately 3:15 a.m. the morning of her death. The testimony bore out that around that time, Victim engaged in a telephone call with Appellant, who arrived at Ms. Greenlee's house shortly thereafter. Victim was found unresponsive by Ms. Greenlee and her mother approximately seventy-five minutes later, while the other residents of the house and Appellant slept.

Based on this testimony, the jury was able to logically infer that, although there may have been people other than Appellant in the residence, Appellant was the one who provided Victim with fentanyl. We will not reweigh the evidence to reach a different conclusion. *See Roberts*, *supra* at 1223; *see also Commonwealth v. Ovales*, 144 A.3d 957, 969 (Pa.Super. 2016) (noting "that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence").

The evidence further showed that before the ambulances arrived, Appellant ran past Ms. Greenlee, indicating that he could not stay because he had active warrants. Coupling this flight with the extensive text messages showing that Appellant obtained drugs for Victim, the factfinder could

reasonably find that he delivered fentanyl to Victim when he came to the residence shortly after 3:15 a.m. Appellant's claim that there was no relationship between him and Victim is wholly belied by the record, which showed **dozens** of phone calls and text messages made between them in the twenty-four hours leading up to her death. In short, the evidence collectively demonstrated that Victim died as a result of using fentanyl delivered to her by Appellant, and thus Appellant's sufficiency challenge must fail.

Since Appellant's sole issue on appeal entitles him to no relief, we do not have cause to disturb his conviction.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/09/2024

- 8 -